UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CALVIN DEMETRIUS BUTLER,

Plaintiff,

v.

UNKNOWN ROWDEN et al.,

Defendants.

Case No. 2:26-cv-78

Honorable Sally J. Berens

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues AMF Correctional Officers (COs) Unknown Rowden and Unknown Smith, and AMF itself. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he alleges that on May 25, 2025, he was taken to segregation and subject to a strip search. (*Id*., PageID.3.) Plaintiff states that he followed "the officers' directions to do a strip search, when suddenly, [Defendant] Rowden lied and said [Plaintiff] wasn't bending

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

over when [he] was."[2] (*Id.*) Defendant Rowden told Plaintiff to "spread them," "bend over," and to "spread [his] butt cheeks." (*Id.*) Plaintiff asserts that "the whole time [Plaintiff was] telling him, 'I am.'" (*Id.*) Plaintiff was "completely naked" at the time. (*Id.*) Defendant Rowden then told non-party Sergeant Shainer that Plaintiff was refusing the strip search. (*Id.*) Plaintiff claims that he was in the shower for "at least" thirty minutes "while they suited up and got shields and body armor." (*Id.*) Plaintiff told non-party Sergeant Shainer that he never refused the strip search and "that's why [Plaintiff] was standing there naked." (*Id.*) Non-party Sergeant Shainer then "allowed [Plaintiff] to complete the strip search, but he said they had already suited up, so they had to strap [Plaintiff] down in the chair." (*Id.*) While being placed in the chair, Plaintiff states that "they decided to twist [his] wrists and [] ankles using unnecessary force." (*Id.*)

On December 23, 2025, Plaintiff asserts that Defendant Smith threatened him. (*Id.*) "Around 9:20 a.m. that day, [Defendant] Smith made rounds and [Plaintiff] simply asked if [Defendant Smith] could help [him] get [his] Christmas bag." (*Id.*) Plaintiff asserts that Defendant Smith responded, "Quit asking me, you're not getting s[***]!" (*Id.* (asterisks added).) Plaintiff then asked Defendant Smith who he was talking to because Plaintiff was not sure. (*Id.*) Defendant Smith came back towards Plaintiff's cell and said to Plaintiff: "I'm talking to you, I'll beat the s[***] out of you! You beat up a guy that didn't even fight back. I'll beat your a[**]!" (*Id.*, PageID.3–4 (asterisks added).) Plaintiff claims that he turned in a "body camera footage form on time and they didn't turn it in purposely." (*Id.*, PageID.3.) Plaintiff asserts that he turns in a request for body camera footage "with every situation and they never turn it in [and] they never follow policy." (*Id.*, PageID.4.) Plaintiff also filed a complaint with the "Legislative Correction

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

Ombudsman" for the "situation with [Defendant] Smith and the facility told them the body camera footage was misplaced." (*Id.*)

Plaintiff also asserts that several other incidents occurred at AMF on unspecified dates. (*See id.*) Plaintiff contends he was without power in his cell for "weeks" until Plaintiff taught himself how to fix it. (*Id.*) Further, Plaintiff claims that staff at AMF constantly ignore him, and that one time, Plaintiff "thought [he] was dying" so he hit the emergency button in his cell, but nobody ever came to help. (*Id.*) "Officers have wr[itten] [Plaintiff] bogus tickets, lying, saying [Plaintiff] threatened them, and this keeps [Plaintiff] in level 5." (*Id.*) Plaintiff asserts that the "administration" always gives him the worst penalty possible for misconduct tickets. (*Id.*) For example, Plaintiff claims he was taken to segregation for his "first fight at this facility," though he has witnessed others receive lesser penalties. (*Id.*)

As of February 24, 2026, Plaintiff asserts he had been in segregation "for 65 days and counting" for an unspecified reason. (*Id.*) Plaintiff asserts that "they have no reason to hold [him] in seg[regation] and [he has] seen guys get out in 30–40 days for the same ticket." (*Id.*)

On February 25, 2026, Defendant Rowden did not give Plaintiff a breakfast tray "for no reason at all." (*Id.*) Plaintiff claims that Defendant Rowden gave everyone a breakfast tray but him. (*Id.*) Further, Plaintiff claims that Defendant Rowden also denies Plaintiff a snack bag "daily" even though Plaintiff has a "medical detail," and he receives a snack bag every day except the days Defendant Rowden works. (*Id.*) Furthermore, Plaintiff avers that the "administration purposely places [Defendant Rowden] on the rock to cause a hostile environment." (*Id.*) Plaintiff states that he filed a grievance against Defendant Rowden but "the grievance was thrown away." (*Id.*) Plaintiff also filed a complaint with the Michigan Department of Civil Rights but it appears it was denied because "they couldn't prove it had anything to do with race or discrimination." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims regarding excessive force, sexual abuse, the conditions of his confinement, and inadequate medical care under the Eighth Amendment, a claim of retaliation under the First Amendment, and due process and equal protection claims under the Fourteenth Amendment. As relief, Plaintiff asks the Court to "get [him] away from this facility as they are retaliating and causing further stress, abuse, and negligence." (*Id.*, PageID.5.) Plaintiff also seeks compensatory damages. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendant AMF**

Plaintiff names AMF as a Defendant. (Compl., ECF No. 1, PageID.2.) In his complaint, Plaintiff faults the AMF "administration" and "staff" for ignoring him, giving him harsh penalties for misconduct tickets, and for placing Defendant Rowden in a unit to create a "hostile environment." (*Id*., PageID.3–4.) However, as explained below, Plaintiff may not maintain a Section 1983 action against AMF.

As an initial matter, AMF is not a separate entity capable of being sued pursuant to Section 1983. *See, e.g.*, *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013) (discussing that "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners," and "[t]hey are not the proper public entity for suit"); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . ."). Also, AMF, acting through the MDOC, is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*,

722 F.3d 768, 771 (6th Cir. 2013); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006).

Further, to the extent that Plaintiff intends to bring claims against the AMF "administration" or "staff" as a whole, "[s]ummary reference to a single, five-headed 'Defendants' [or 'they' or 'staff' or 'officers'] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to "staff," "they," and the "administration" are insufficient to show that any individuals, let alone the named Defendants, were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, any intended claims against Defendant AMF, the AMF "administration," and "staff" will be dismissed for failure to state a claim.

### B. Eighth Amendment Claims

Plaintiff brings claims under the Eighth Amendment regarding alleged sexual abuse, excessive force, verbal threats, inadequate conditions of confinement, and inadequate medical care against Defendants Rowden and Smith.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary

and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims); *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (applying deliberate indifference standard to sexual abuse claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To satisfy the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Claim regarding Sexual Abuse

Plaintiff brings a claim of sexual abuse under the Eighth Amendment against Defendant Rowden.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty*, 915 F.3d at 1095 (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (finding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). In contrast, repeated and extreme incidents of sexual harassment may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court held that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

Further, the Sixth Circuit has held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that prisoner's claim

that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

In this case, Plaintiff alleges that on May 25, 2025, Defendant Rowden subjected Plaintiff to a strip search and falsely claimed that Plaintiff refused to comply with the search, causing Plaintiff to have to stand in a shower naked until other officers arrived. (Compl., ECF No. 1, PageID.3.) However, as explained below, the factual allegations taken as true do not state a claim for sexual abuse.

Plaintiff claims that he was taken to segregation and subject to a strip search. Plaintiff asserts he was naked and complied with the search, but Defendant Rowden "lied and said [Plaintiff] wasn't bending over when [he] was." (*Id.*) Defendant Rowden told Plaintiff to "spread them," "bend over," and "spread [his] butt cheeks." (*Id.*) Plaintiff asserts he was naked in the shower for at least thirty minutes before non-parties Sergeant Shainer and other COs arrived and allowed Plaintiff to complete the search, but subsequently strapped Plaintiff in a restraint chair. (*Id.*) The Court does not minimize Plaintiff's experience, but Plaintiff's own factual allegations show that Defendant Rowden's statements were made during a strip search and that Plaintiff was not physically touched by anyone during the strip search. "Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what [] detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322 (2012). Therefore, in the context of conducting a strip search, Plaintiff's allegations are insufficient to show that Defendant Rowden violated Plaintiff's Eighth Amendment rights.

Although Plaintiff asserts in a conclusory manner that Defendant Rowden "sexually abused" him, as explained above, Plaintiff fails to allege any *facts* to support his conclusory

assertion. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff has alleged no facts to plausibly suggest that Defendant Rowden's comments and actions during the strip search rose to the level of an Eighth Amendment violation.

Accordingly, Plaintiff's Eighth Amendment sexual abuse claim against Defendant Rowden will be dismissed for failure to state a claim.

### 2. Claim regarding Placement in Restraint Chair

Plaintiff asserts that on May 25, 2025, after allegedly being falsely accused by Defendant Rowden of refusing the strip search, Plaintiff was strapped in a restraint chair. (Compl., ECF No. 1, PageID.3.) While he was being strapped to the chair, Plaintiff claims that "they decided to twist [his] wrists and [] ankles using unnecessary force." (*Id.*) To the extent that Plaintiff intended to raise an Eighth Amendment excessive force claim against Defendant Rowden, as explained below, he fails to state such a claim.

As relevant to excessive force claims, the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending

conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted).

As stated above, there is an objective component and a subjective component to Eighth Amendment claims. *Farmer*, 511 U.S. at 834. First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id*. (quoting *Hudson*, 503 U.S. at 8–9.) "Courts may also consider the circumstances 'as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.'" *Id*. (citation omitted).

With respect to Defendant Rowden's involvement in Plaintiff's placement in the restraint chair, Plaintiff alleges only that at some point prior to his placement in the restraint chair, Defendant Rowden told non-party Sergeant Shainer that Plaintiff refused the strip search. (Compl., ECF No. 1, PageID.3.) Thereafter, Plaintiff was in the shower for approximately thirty minutes "while they suited up and got shields and body armor," and then Plaintiff told non-party Sergeant Shainer that he never refused the strip search. (*Id.*) Plaintiff alleges that non-party Sergeant Shainer "allowed [Plaintiff] to complete the strip search, but he said they had already suited up, so they had to strap [Plaintiff] down in the chair." (*Id.*) Then, Plaintiff alleges that while he was being placed in the chair, "they decided to twist [his] wrists and [] ankles using unnecessary force," without specifying who in fact placed him in the chair and twisted his wrists and ankles. (*Id.*)

Plaintiff does not allege any facts to show that Defendant Rowden was involved in Plaintiff's placement in the restraint chair, and Plaintiff's vague reference to "they" is not sufficient to show that Defendant Rowden was involved in the alleged use of excessive force against Plaintiff. *See Boxill*, 935 F.3d at 518; *Zakora v. Chrisman*, 44 F.4th 452, 468 (6th Cir. 2022) (finding that a complaint's ambiguous reference to "they" does not support an inference that specific defendants are at fault).

Accordingly, Plaintiff's Eighth Amendment claim of excessive force against Defendant Rowden is properly dismissed for failure to state a claim.

**3. Claims regarding Verbal Threats**

Plaintiff also brings an Eighth Amendment claim against Defendant Smith regarding his verbal threats to Plaintiff on December 23, 2025. (Compl., ECF No. 1, PageID.3.) However, verbal threats or harassment by a prison official do not constitute punishment under the Eighth Amendment. *See e.g. Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Martin v. Washington*, 1:24-cv-646, 2025 WL 715500, at *6 (W.D. Mich. Mar. 6, 2025) ("In general, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions."). *But see Small v. Brock*, 963 F.3d 539, 541–42 (6th Cir. 2020) (holding that death threats, together with brandishing a deadly weapon, can be sufficient to state a claim of excessive force).

Here, Plaintiff does not assert that Defendant Smith acted on any threat, nor threatened Plaintiff with a weapon. *See Ivey*, 832 F.2d at 954–55; *Small*, 963 F.3d at 541–42. Plaintiff's factual

allegations, taken as true, show that Defendant Smith verbally threatened Plaintiff on one occasion, and that is not sufficient to state an Eighth Amendment claim.

Accordingly, Plaintiff's Eighth Amendment claim against Defendant Smith will be dismissed for failure to state a claim.

**4. Claims Regarding Food Tray and Snack Bags**

Plaintiff also brings claims regarding allegedly inadequate conditions of confinement and medical care against Defendant Rowden for Rowden's denial of a food tray on one occasion and denial of a snack bag on multiple occasions.

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate clothing, food and medical care." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). "An Eighth Amendment conditions of confinement claim [] contains both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011).

> The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him the minimal civilized measure of life's necessities. The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs.

*Id*. (citations and internal quotation marks omitted). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "A substantial deprivation of food may be sufficiently serious" to state a claim under the Eighth Amendment. *Mobley v. Smith*, 4:05-cv-153, 2007 WL 1650934, at *5 (W.D. Mich. June 4, 2007) (quoting *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)); *see also Clark-Murphy v. Foreback*, 439 F.3d 280, 292

(6th Cir. 2006) ("[Prisoner] had a clearly established right not to be deprived of food and water."). However, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond*, 450 F. App'x at 455 (quoting *Ivey*, 832 F.2d at 954).

As explained below, in this action, Plaintiff's factual allegations fail to state an Eighth Amendment claim for the deprivation of adequate food. Plaintiff alleges that Defendant Rowden denied him breakfast on one occasion on February 25, 2026, and that Defendant Rowden denies Plaintiff a snack bag every day that Defendant Rowden works. Plaintiff does not allege how many times per week Defendant Rowden works.

Isolated deprivations of meals do not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (concluding that denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (holding that the denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered). An isolated deprivation of one meal and continued deprivations of a snack on certain days of the week, while unpleasant, cannot be considered a "substantial deprivation" under the Eighth Amendment. *See Mobley*, 2007 WL 1650934, at *5; *Richmond*, 450 F. App'x at 455.

Furthermore, Plaintiff does not allege facts to suggest that Defendant Rowden knew that the deprivation of a snack bag posed a substantial risk of serious harm to Plaintiff. Plaintiff does not state what medical condition he has to necessitate a daily snack bag nor state that he faced a risk of serious harm if deprived of a snack bag. *See Richmond*, 450 F. App'x at 455. *But see Joyce v. Sprango*, 1:25-cv-900, 2025 WL 2837416, at *10 (W.D. Mich. Oct. 7, 2025) ("The risk of harm

offered by Plaintiff is that . . . Plaintiff's blood glucose 'dropped below safety levels.'"). Plaintiff only vaguely asserts that he had "a medical detail" for a snack bag. (Compl., ECF No. 1, PageID.3.) The facts as alleged by Plaintiff are insufficient to show that Defendant Rowden was deliberately indifferent to Plaintiff's serious medical needs by failing to give Plaintiff a snack bag.

Accordingly, for these reasons, Plaintiff's Eighth Amendment conditions of confinement and medical care claims will be dismissed for failure to state a claim.

### C. First Amendment Retaliation Claims

In the relief section of Plaintiff's complaint, Plaintiff states that "they are retaliating and causing further stress, abuse, and negligence." (*Id.*, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It appears that Plaintiff believes that many of the events that occurred during his incarceration at AMF were retaliatory actions; however, Plaintiff's retaliation claims are entirely conclusory and fail to state a claim because he fails to allege *facts* to support his retaliation claims. For example, Plaintiff alleges that he filed a grievance against Defendant Rowden for the alleged sexual abuse and excessive force incident on May 5, 2025, and Plaintiff claims "the grievance was thrown away." (Compl., ECF No. 1, PageID.4.) However, Plaintiff filed the grievance after the

incident with Defendant Rowden, so Plaintiff fails to show that he engaged in protected conduct prior to the May 5, 2025 incident with Defendant Rowden. Moreover, Plaintiff does not state who threw away his grievance against Defendant Rowden or how he knows it was thrown away. (*See generally* Compl., ECF No. 1, PageID.4.)

Plaintiff also alleges that on December 23, 2025, while Defendant Smith was making rounds, Plaintiff asked "if [Defendant Smith] could help [him] get [his] Christmas bag." (Compl., ECF No. 1, PageID.3.) In response, Defendant Smith stated: "Quit asking me, you're not getting shit!" (*Id.*) Plaintiff then asked if Defendant Smith was talking to Plaintiff, and Smith replied: "I'm talking to you, I'll beat the s[***] out of you! You beat up a guy that didn't even fight back. I'll beat your a[**]!" (*Id.*, PageID.3–4 (asterisks added).) To the extent that Plaintiff intended to raise a First Amendment retaliation claim regarding his interaction with Defendant Smith on December 23, 2025, as explained below, he fails to state a claim. Specifically, even assuming, without deciding, that Plaintiff's request to Defendant Smith regarding Plaintiff receiving his Christmas bag constituted protected conduct and that Defendant Smith's subsequent actions constituted adverse action, Plaintiff's own allegations show that Defendant Smith's subsequent actions were motivated by Defendant Smith's dislike of Plaintiff because Plaintiff "beat up a guy that didn't even fight back," not due to any protected conduct.

In short, Plaintiff's "conclusory allegations of retaliatory motive," which are "unsupported by material facts," do not state a claim under Section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459

(6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff fails to state a First Amendment retaliation claim and these claims will be dismissed.

### D. Fourteenth Amendment Claims

#### 1. Due Process

The Court construes Plaintiff's complaint to raise a due process claim regarding Plaintiff's placement in segregation.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 483–84 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 487, 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir.

1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for 30 days did not constitute an atypical and significant hardship within the context of his prison life. 515 U.S. at 486–87; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff asserts that he has been in segregation "for 65 days and counting," even though he asserts that other inmates have only been placed in segregation for "30–40 days for the same ticket." (Compl., ECF No. 1, PageID.4.) Plaintiff does not state what his misconduct ticket was for; nor does he state which Defendants, if any, were responsible for placing Plaintiff in segregation. (*See generally id.*) Regardless, as explained below, Plaintiff fails to state a due process violation.

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 487, 484. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation for 65 days does not constitute an "atypical and significant hardship," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434, 439–40 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 486 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*,

410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). In short, Plaintiff fails to show that his placement in segregation for over 65 days constituted an "atypical or significant hardship," and he fails to state any due process claims regarding his receipt of this misconduct ticket. *See Sandin*, 515 U.S. at 484.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed for failure to state a claim.

**2. Equal Protection**

On February 25, 2026, Plaintiff claims that Defendant Rowden gave everyone a breakfast tray except Plaintiff. (Compl., ECF No. 1, PageID.4.) Plaintiff also asserts that he has been in segregation "for 65 days and counting," and that other inmates have only been placed in segregation for "30–40 days for the same ticket." (*Id.*) The Court construes these allegations to raise a Fourteenth Amendment equal protection claim, but as explained below, he fails to state such a claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

As to Plaintiff's claim that Defendant Rowden gave everyone a breakfast tray except for Plaintiff, these facts are insufficient to state an equal protection claim. Plaintiff's allegation implies that he and the other inmates were similarly situated, but he states no facts to support that implication. *See id*. As to Plaintiff's claim that he has been in segregation for over 65 days, and he has seen other inmates be placed in segregation for 30–40 days for the same misconduct ticket, Plaintiff does not state what his misconduct charge was for. Without facts indicating that the comparator inmates are similar in all relevant respects, this Court will not infer that Plaintiff's equal protection rights were violated. Additionally, Plaintiff's factual allegations do not state who was responsible for Plaintiff's placement in segregation. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Without an allegation indicating who was responsible for placing Plaintiff in segregation, this Court will not infer that the named Defendants were responsible for the alleged violation of Plaintiff's equal protection rights.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim.

**E. Section 1983 Claims regarding Violation of the MDOC's Policies**

Plaintiff also claims that Defendants failed to follow MDOC policy by failing to turn in body camera footage upon Plaintiff's request. (*See* Compl., ECF No. 1, PageID.4.) However, claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (holding that a parole board's failure to follow state procedural standards could constitute a violation of

state law but not federal law). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under Section 1983.

Moreover, courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) *see also McGlothan v. Aikens*, No. 2:23-cv-126, 2023 WL 5088898, at *5–6 (W.D. Mich. Aug. 9, 2023) ("[A] policy violation does not equate to a constitutional violation."). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's Section 1983 claims regarding the violation of the MDOC's policies and procedures will be dismissed for failure to state a claim.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: September 28, 2026

/s/ Sally J. Berens
SALLY J. BERENS
United States Magistrate Judge